**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| DANIEL MCLAUGHLIN, | |
| Plaintiff, | Civil Action No. 1:20-cv-11770-PBS |
| v. | **LEAVE TO FILE WITH REDACTIONS GRANTED ON OCTOBER 5, 2022 (DKT. 40)** |
| LENOVO GLOBAL TECHNOLOGY (UNITED STATES) INC., | |
| Defendant. | |

**DEFENDANT'S MEMORANDUM IN SUPPORT OF ITS MOTION**
**FOR SPOLIATION SANCTIONS AGAINST PLAINTIFF DANIEL MCLAUGHLIN**

Defendant Lenovo Global Technology (United States) Inc. ("Lenovo" or "Defendant") submits this Memorandum in Support of Its Motion for Spoliation Sanctions against Plaintiff Daniel McLaughlin. Despite Lenovo's repeated requests, Plaintiff deprived it from accessing key evidence stored on his Lenovo-issued laptop (the "Laptop") by refusing to return it to Lenovo for fourteen months after his termination, in violation of contractual obligations and company policy. Further, without permission from Lenovo and at a time when he fully intended to sue Lenovo for the allegedly unpaid commissions and expenses at issue in this litigation, Plaintiff wiped the Laptop, making it impossible for Lenovo to determine what documents or information he accessed or otherwise destroyed on the eve of litigation.

Lenovo only learned of Plaintiff's intentional destruction of Company property through discovery in this case. While Plaintiff claims to have preserved certain electronically stored information from the Laptop prior to wiping it – including a copy of his .PST file and a copy of certain documents/information that he had previously stored on the Laptop's D:Drive – discovery has revealed that he either altered documents on those copies or deleted information from them, prior to providing *copies* of those copies to Lenovo in June 2021. He has further refused to provide

Lenovo with an index of the documents and information that, according to his counsel, were on the Laptop at the time of his termination, and refused to provide Lenovo with a certification stating that he has neither used nor altered its Confidential Information.

Plaintiff's actions leave Lenovo and the Court unable to assess or verify many of Plaintiff's claims and deprive Lenovo of its ability to fully and fairly defend itself in this case, as certain evidence relating to the claims and defenses at issue would have resided exclusively on the Laptop. Plaintiff's intentional spoliation of that evidence warrants dismissal of his claims in their entirety. At a minimum Lenovo requests that the Court enter an order precluding Plaintiff from (1) relying on any documents, emails, or calendar entries copied from the Laptop in attempting to prove his claims to unpaid commissions and business expenses, (2) relying on the expense reports he supposedly created in 2020 by referencing calendar entries that do not exist in the .PST file he returned to Lenovo in 2021, in support of his claim to unpaid expenses, and (3) claiming that he did not have knowledge of the terms of Lenovo's commission policies. Should this case proceed to trial, Lenovo further requests that the Court instruct the jury that it must presume that any information that may have been housed on the Laptop, but no longer exists, was unfavorable to Plaintiff. Lenovo further requests that the Court award it the attorney's fees and costs it unnecessarily incurred in researching and trying to recreate Plaintiff's destruction of key evidence, up through and including litigating the present motion.

## FACTS

Plaintiff began working for Lenovo as a remote Account Executive in July 2016. Upon his hire, Lenovo issued Plaintiff the Laptop, which belonged to Lenovo and on which Plaintiff stored Lenovo's confidential and proprietary information. On July 2, 2016, Plaintiff electronically signed an Agreement Regarding Confidential Information, Intellectual Property and Other Matters

("Agreement"), which indisputably contractually obligated him to return the Laptop and all of the information contained thereon upon his separation from Lenovo.  A true and correct copy of the Agreement is attached as Exhibit 1 to the Affidavit of Alison H. Silveira, Esq., filed simultaneously herewith (the "Silveira Aff.").

Lenovo terminated Plaintiff in April 2020 for insubordination – including his decision to share Lenovo's confidential pricing information in direct contravention of specific instructions from his manager not to do so.  Lenovo reminded Plaintiff that he was contractually obligated to immediately return the Laptop, and all of Lenovo's confidential and proprietary information.  This reminder was especially important because under Lenovo's policy, the only location where remote user-specific ESI – including an employee's complete .PST, user-archived email files, and saved documents – are housed is on the employee's local, company-issued laptop. *See* Defendant's Response to Plaintiff's First Set of Interrogatories, dated Dec. 16, 2021 ("Int. Responses"), at 1, a true and correct copy of which is attached as Exhibit 2 to the Silveira Aff. ███████████

██████████████████████████████████████████████████████

████████████████████████████████ *Id.* at 3-4.

On June 11, 2020 – just weeks after he was terminated – Plaintiff filed his Complaint, claiming that Lenovo wrongfully failed to pay him for certain commissions and a bonus, and failed to reimburse him for certain business expenses.  Complaint (Dkt. 1).  Importantly, Plaintiff bases his claims and entitlement to damages on emails, calendar entries, and other documents that were only retained on the Laptop given the Company's applicable document retention policy. *See* Transcript of Deposition of Daniel McLaughlin, dated Jan. 19, 2022 ("Pl. Tr.") at 40:20-22, 289:8-10, a true and correct copy of relevant excerpts of which is attached as Exhibit 3 to the Silveira Aff.; *see also* Silveira Aff., Ex. 2.

**A. Plaintiff Used the Laptop in December 2020 to Produce His Initial Disclosures, and Refused to Return it to Lenovo.**

In November 2020, after months of refusing to return the Laptop, Plaintiff served his Rule 16 Initial Disclosures in which it became clear to Lenovo that Plaintiff continued to access Lenovo's Confidential Information contained on the Laptop.   Specifically, Plaintiff produced certain emails and other documents (such as purchase orders) that he saved locally on the Laptop that are indisputably Lenovo Confidential Information.   Lenovo's Confidential Information had been withheld from it for seven months because it was stored exclusively on the Laptop, which Plaintiff had refused to return to Lenovo.   Lenovo promptly raised with Plaintiff's counsel its concerns not only about Plaintiff's failure to return the Laptop (which Lenovo had repeatedly requested since Plaintiff's termination date in April) but also about his post-termination access to, and use of, Lenovo's Confidential Information. Specifically:

- On December 29, 2020, Lenovo raised the issue with Plaintiff's counsel by telephone.   *See* Letter from K. McGurn to T. Evans, dated Sept. 14, 2021 (a true and correct copy of which is attached as Exhibit 4 to the Silveira Aff.), at 2.   He reported that he was unaware that Lenovo's equipment was still in Plaintiff's possession.   *Id.* Lenovo requested that Plaintiff certify that he had not misused Lenovo's Confidential Information that he wrongfully retained.   *Id.*   Plaintiff's counsel committed to discussing Lenovo's concerns with his client.   *Id.*

- On January 6, 2021, Plaintiff's counsel confirmed, again by telephone, that Plaintiff had in fact retained the Laptop, but because he had continued to use it for personal reasons after his termination (in violation of Lenovo policy), he sought to "retrieve" personal documents before returning it to Lenovo.   *Id.*   Counsel re-committed that Plaintiff would provide the requested certification that he had not misused Lenovo's Confidential Information, but he never supplied it.   *Id.*

- Following that conversation, Lenovo explored several options by which Plaintiff might safely extract personal data from the Laptop, and determined no such avenue would adequately preserve Lenovo's Confidential Information or the information presumably still stored on the Laptop.   On January 25, 2021, Lenovo reiterated that it did not consent to Plaintiff removing any documents from the Laptop.   *See* Silveira Aff., Ex. 4, at 2.   Plaintiff's Counsel responded that he, personally, had an index of the files on the Laptop, and would review it within the following 24 hours to determine what information he considered to be "personal" to Plaintiff.   *Id.*   He also acknowledged that the promised certification was outstanding.   *Id.*

- Two days later, Plaintiff's counsel stated that Plaintiff "is willing to return the computer to Lenovo and to provide them with a storage device that he has that has a back-up of data that was previously on his computer." Email from T. Evans to A. Silveira, dated Jan. 27, 2021, a true and correct copy of which is attached as <u>Exhibit 5</u> to the Silveira Aff. The undersigned promptly responded, reminding him that Lenovo did not consent to the removal of **any** information from its computer. *Id.* Lenovo also sought confirmation that the backup is the "only copy that [Plaintiff] has of any Lenovo documents or other information." *Id.* Plaintiff's Counsel did not respond to that email, or the follow up email that the undersigned sent on February 1, 2021. Email from A. Silveira to T. Evans, dated Feb. 1, 2021, a true and correct copy of which is attached as <u>Exhibit 6</u> to the Silveira Aff.

- On February 10, 2021, the parties' counsel spoke again about the Laptop and the newly revealed storage device. Plaintiff's counsel reiterated his client's desire to remove "personal" information and documents before he returned the Laptop and the storage device. Lenovo reiterated its objection. Silveira Aff., <u>Ex. 4</u>, at 2.

- On March 4, 2021, Lenovo provided Plaintiff with two options: (1) return Lenovo's Laptop and storage device with no documents removed; or (2) engage a third party vendor to create a file list from which Plaintiff could identify for Lenovo the personal files he sought to remove from the Laptop and/or hard drive. Email from A. Silveira to T. Evans, dated Mar. 4, 2021, at 1, a true and correct copy of which is attached as <u>Exhibit 7</u> to the Silveira Aff.

- Plaintiff's counsel did not respond to the March 4 letter, or to Lenovo's March 16 or 24, 2021 follow up correspondence. Silveira Aff., <u>Ex. 4,</u> at 2.

During the course of this entire exchange, Plaintiff's counsel affirmatively led Lenovo to believe that Plaintiff had not wiped or otherwise altered any of the material on the Laptop following his termination. As Lenovo learned only through subsequent, costly discovery, however, that was demonstrably false.

### B. When Plaintiff Finally Returned the Laptop and Storage Device to Lenovo in June 2021, Lenovo Learned for the First Time that He had Wiped It.

Plaintiff still had not returned the Laptop as of May 2021, when Lenovo raised the issue during court-ordered mediation. On June 2, 2021 – *nearly 14 months after Plaintiff's termination and Lenovo's request that he return the Laptop unmarred* – Plaintiff finally returned the Laptop, and a SD card containing what he later testified was a "complete backup of everything that was on the machine." Pl. Tr. 283:16-284:1.

Immediately after receiving the Laptop and the SD card, Lenovo engaged a well-known, reputable third-party forensic expert, StoneTurn, to examine the devices.  StoneTurn determined that the Laptop's hard drive "seems to have been wiped or is brand new as there is no data residing on the drive."  In other words, "the entire drive was zero'd out, effectively containing no data."  Email from S. Tuttle to K. McGurn, dated Aug. 25, 2021, a true and correct copy of which is Exhibit 8 to the Silveira Aff.  According to Lenovo's IT department, the serial number of the returned hard drive did not match the original.

As to the SD card, while the card itself contained 6,554 documents, StoneTurn determined that the metadata on those documents had been largely erased, thereby making it impossible for Lenovo to determine when the documents were created or accessed.  In its place, each and every file bore a "last accessed" and "file created" date of June 2, 2021 – the same day Plaintiff delivered the SD card to Lenovo.  *See* Daniel McLaughlin 32GB Micro SD Card – Comprehensive Listing (DATA Folder), a true and correct copy of which is attached as Exhibit 9 to the Silveira Aff.  Approximately 50 files further reflect a "last written" date *after* Plaintiff was terminated by Lenovo, indicating that Plaintiff in fact modified those documents post-termination.  *See id.*

Neither the Laptop nor the SD card contained Plaintiff's .PST (email and calendar) files, thereby undermining Plaintiff's testimony that the SD card was a "complete backup" of the Laptop; it was not.  Lenovo immediately alerted Plaintiff's counsel to this alarming development.  Silveira Aff., Ex. 4, at 3.  On September 27, 2021, Plaintiff delivered to the undersigned a *second* SD card that he claims contained a backup of the missing .PST file, which Lenovo promptly sent to StoneTurn.  Yet again, however, it is impossible for Lenovo to determine what information Plaintiff may have deleted from or modified in that file prior to returning it to Lenovo.[1]

---

[1] Plaintiff further testified in January 2022 that he has retained a copy of that .PST file for himself, and has steadfastly refused – and continues to refuse – to return this to Lenovo despite admitting that the file

**C.  Two Months After Denying He Wiped the Laptop, Plaintiff Admits Doing So Shortly Without Keeping an Unmarred Backup.**

In an attempt to determine what Plaintiff had done with the highly relevant information stored on the Laptop, Lenovo sent Plaintiff Requests for Admission on September 30, 2021.  In his sworn responses, Plaintiff admitted that Lenovo requested that he return the Laptop.  Daniel McLaughlin's Response to Defendant's First Set of Requests for Admissions, dated Nov. 2, 2021, at 1, a true and correct copy of which is attached as <u>Exhibit 10</u> to the Silveira Aff.  However, he denied – under oath - that he erased data from that Laptop, instead claiming that he simply "removed his personal data from the [L]aptop."  *Id.* at Request 4 ("Request:  Admit that, prior to returning your Lenovo-issued laptop computer to Lenovo, you erased all data thereon.  Answer: McLaughlin admits that he removed his personal data from the [L]aptop.  Otherwise, denied.").  This sworn statement is, yet again, demonstrably false.

**D.  Plaintiff Revealed in Deposition that He Wiped the Laptop Shortly after His Termination – *i.e.,* on the Eve of Litigation – and did not Keep a Clean Backup.**

Just two months later, in January 2022, Lenovo deposed Plaintiff.  Only then did Plaintiff admit that, contrary to his sworn response to a request to admit provided just two months prior, he in fact wiped the Laptop - or, as he terms it, "blasted the operating system" - "shortly after [he] left Lenovo."  Pl. Tr. 40:20-22, 289:8-10.  He further testified that prior to wiping the Laptop, he did not in fact create a backup of "everything that was on the machine."  *See id.* at 283:16-284:1.  He only copied one drive of the Laptop – the D:Drive; he admits that he wiped completely the Laptop's C:Drive, and "didn't check and confirm that there were no Lenovo documents" on the

---

contains Lenovo's Confidential Information. Pl. Tr. at 125:9-24.  This is a direct breach of the Agreement, and is particularly concerning given that Plaintiff is now employed by Supermicro, a Lenovo competitor. *See id.* at 38:1-10 (Plaintiff is the Senior Director of Sales at another computer company, Supermicro). Lenovo reserves all of its rights with respect to Plaintiff's on-going contractual violations.

C:Drive before he wiped it.  *Id.* at 267:18-20, 293:14-294:5.[2]  He further concedes that, if any Lenovo documents were on the C:Drive – which Plaintiff can neither confirm nor deny, because he did not check – he destroyed them.  *Id.*  After wiping the Laptop, Plaintiff admitted that he continued to use the machine as if it were his own property.  *Id.* at 39:12-16 ("Q: Up until [you returned the computer in] June 2021, had you been using that computer for any regular purpose? A: Yes.").  He then wiped it *again* in June 2021 before finally returning it to Lenovo. *Id.* at 41:4-6 ("Q: Then did you wipe it again before you returned it to us in June of 2021?  A  Yes.").

Compounding matters, Plaintiff did not keep a pristine copy of the Laptop's D:Drive as he purportedly copied it in 2020.  In direct contravention of his contractual obligation to not access any of Lenovo's Confidential Information, he accessed the copy of the D:Drive on several occasions, including (1) to compile his expense reports in or around May 2020, and (2) in connection with his Rule 16 Initial Disclosures and subsequent discovery.  He further testified that he cannot say for sure whether he altered any of the documents previously stored on the D:Drive. *See* Pl. Tr. 264:17-265:3; *see also id.* at 54:16-21 (regarding a spreadsheet titled "DJM Q-4 2018 Correct ICS Calculation," which Plaintiff alleges tracks certain underpayments of commissions from 2018, "Q: Did you make some changes to it before you produced it in your initial disclosures in this case?  A: *I don't think so*, no.") (emphasis added).  StoneTurn's analysis confirms that Plaintiff in fact modified several documents, including this spreadsheet. *See* Silveira Aff., <u>Ex. 9.</u>

---

[2] Plaintiff testified that he had "petitioned my testimony and I had, on the C drive, the operating systems and applications," including "all of the passwords and everything related to cookies and all that stuff. . . ." Pl. Tr. 267:11-23.  He further testified that he "*do[es] not believe* there was any data [on the C: Drive].  The *only thing I knew to be on the C drive* was the operating system and application files."  *Id.* at 291:24-292:2. (emphasis added).  He admits, however, that there "could have been" documents on the C:Drive, stating "You use a system for how long, *if you save something to the desktop by mistake and it ends up there, that's on the C drive.*"  *Id.* at 292:12-22 (emphasis added).  Nothing about Plaintiff's belief changes his unequivocal testimony that he did not confirm that no Lenovo documents or information were stored on the C:Drive before he erased it.

Lenovo's concerns regarding the potential deletion of documents are particularly heightened given that Plaintiff's counsel informed Lenovo in January 2021 that counsel "had an index of the files on the [L]aptop," as they existed in 2020, but Plaintiff has refused to provide Lenovo with a copy of that index despite several follow-up requests.[3]

Plaintiff also testified that the SD card that he returned to Lenovo in June 2021 with the Laptop was *not* the copy of the D:Drive that he made in 2020.  Rather, he created a copy of that SD card, and he provided that second copy to Lenovo "when I gave you the [L]aptop," *i.e.* in June 2021.  Pl. Tr. 284:21-285:13, 287:6-9 ("So I made a copy [in 2020], and that was the copy that I had and it was on an SD card, and so that's when I had it *and I made a copy of that to be able to give to you.*") (emphasis added).  He has not explained where the original May 2020 (alleged) copy of the Laptop's D:Drive is, or why he did not return that original copy to Lenovo but instead made a copy of the copy in June 2021.  *See id.* at 286:15-287:9.

### E.  Plaintiff Destroyed and/or Altered Evidence Relevant to His Claims.

Lenovo cannot – nor is it required to - prove the absence of data caused by Plaintiff's intentional and destructive conduct.  However, the following three examples demonstrate the severity of Plaintiff's actions precluding Lenovo from having access to the information it needs to defend against Plaintiff's claims.

First, Count I of Plaintiff's Complaint alleges that Lenovo failed to properly pay commissions to Plaintiff, and seeks to recover treble damages and attorneys' fees under the

---

[3] On September 14, 2021, Lenovo again requested that Plaintiff's counsel provide it with "(1) the index of files from [Lenovo's] computer that you had at your disposal as of our January 25 call, and (2) a copy of the litigation hold communication or correspondence that you had with Mr. McLaughlin, or other representation that you advised Mr. McLaughlin of the legal necessity to preserve evidence."  Silveira Aff., Ex. 4, at 3.  Plaintiff's counsel did not respond to these requests.  Instead, he sent a letter on September 22, seeking copies of Lenovo's retention policy, apparently seeking to deflect blame for his own client's misconduct.  Letter from T. Evans, dated September 22, 2021, a true and correct copy of which is attached as Exhibit 17 to the Silveira Aff.

Massachusetts Wage Act.  Compl., ¶¶ 15-22.  Whether commissions are due and owing is determined by reference to the commission plan documents in place during the time the commissions were allegedly earned.  *See, e.g.*, *Serabian v. SAP Am., Inc.*, No. 16-cv-10501, 2018 WL 1041540, at *8 (D. Mass. Feb. 23, 2018) (citing *McAleer v. Prudential Ins. Co.*, 928 F. Supp. 2d 280, 289 (D. Mass. 2013)).  Lenovo distributed its commission plans to sales team members, including Account Executives, by email.  *See, e.g.*, Email from C. Rojas to D. McLaughlin, dated Apr. 24, 2019, a true and correct copy of which is attached as <u>Exhibit 11</u> to the Silveira Aff.  Only two such emails showing transmittal of a full commission plan applicable to the Plaintiff's claims in this case – from October 26, 2017 and April 24, 2019 – appear in the .PST file that Plaintiff returned to Lenovo in September 2021.[4]  Lenovo expects Plaintiff may argue that he was not aware of the terms of applicable versions of Lenovo's commission plans during the time periods relevant to his claims, or is otherwise not bound by those terms.  Evidence of their transmittal by Lenovo is conspicuously absent from what Plaintiff returned to Lenovo.

Second, Plaintiff claims that he was underpaid commissions in 2018.  Compl.,¶ 7.  In support of his claims, Plaintiff produced with his Rule 16 Initial Disclosures a spreadsheet entitled "DJM Q-4 2018 Correct ICS Calculation" which, as previously discussed, Plaintiff testified that he "do[es]n't think" he altered before producing it.  Pl. Tr. 53:5-10, 54:18-21.  A true and correct copy of the spreadsheet is <u>Exhibit 13</u> to the Silveira Aff.  Plaintiff testified that he created this spreadsheet in 2018, and that "back in 2018, [he] sent it to [his manager] in an email saying 'This is what should be owed.'" Pl. Tr. 53:5-10.  Plaintiff testified that he cannot recall his manager's "exact reply" to that email.  *Id.* at 53:11-14.  Pursuant to Lenovo's retention policy, this email

---

[4] A handful of additional emails, including one from October 2018, attach an "overview" of, or describe key updates to, the commission plans, but not the full plan itself.  *See, e.g.*, Email from C. Rojas to D. McLaughlin, dated Oct. 8, 2018, a true and correct copy of which is attached as <u>Exhibit 12</u> to the Silveira Aff.

would have resided exclusively in the .PST file on the Laptop.  Lenovo has searched the .PST file produced by Plaintiff in September 2021, and no such email exists in that file – suggesting that, if Plaintiff's testimony was accurate, he deleted the email from the .PST prior to turning over the file to Lenovo.  In his November 2020 Rule 16 Initial Disclosures, Plaintiff produced an email to his manager, dated April 27, 2018 – which was again *not* in the .PST file he produced to Lenovo in June 2021 - attaching a similar spreadsheet showing *materially less (approx. 10%) commissions* supposedly owing to Plaintiff for that time period.  Email from D. McLaughlin to C. Rojas, dated Apr. 27, 2018, a true and correct copy of which is attached as Exhibit 14 to the Silveira Aff.  If this is the email Plaintiff was referring to in his deposition, his claim that he did not alter the spreadsheet before producing it to Lenovo is, yet again, false.  In fact, StoneTurn's analysis of the SD card's metadata supports that he altered it, as the file thereon bearing the title "DJM Q-4 2018 Correct ICS Calculation" shows a "Last Written" date of June 9, 2020, suggesting that Plaintiff in fact modified the document – most likely to inflate the amount of commissions he claims are "owing" for this period - *just three days before filing this litigation*.  Silveira Aff., Ex. 9, at 3 line 3.[5]

Third, Plaintiff's claim to unreimbursed business expenses (Count II) is equally tainted. That claim is premised on Plaintiff's request that Lenovo reimburse him for business expenses he incurred over a three year period, but submitted to Lenovo *for the first time* following his termination.  *See* Compl., ¶¶ 10-14.  As to certain of those expenses, Plaintiff testified that he received express approval from his manager to incur the expense, by email.  Pl. Tr. 224:11-17 (with respect to taking clients to sporting events, "Q: Did he approve it in writing, over the phone,

---

[5] This evidence is critical to Plaintiff's effort to establish that commissions were owing.  Pursuant to Lenovo's operative commission plan during the time of this alleged underpayment, "final adjustments" to commission payments for the period are done between approximately April 15, 2018 and May 15, 2018.  Lenovo investigated Plaintiff's alleged underpayment in 2018 and determined, at that time, that no further commissions were owing.

how did that - - A: Yes, yes. Q: Yes, what? A: Writing.  Q: Would that be by email?  A: Yes.").

Yet, once again, Lenovo has searched the copy of the .PST file provided by Plaintiff, and has not

located any such emails.[6]  As to other expenses, Plaintiff testified that he compiled – but did not

submit - "five or six" of these untimely expense reports during his employment, but did not even

attempt to compile the remaining 34 reports, dating back to February 2017, until *after* his

termination.  Pl. Tr. 241:10-14.  He testified that, as to expenses like mileage and meals, he

compiled the reports by looking at "[his] calendar," or "diary" which tracked "where [he] was and

what [he] was doing," *i.e.* the calendar housed in the .PST file on the Laptop.  *See id.* at 246:8-21.[7]

The majority of Plaintiff's claims to allegedly incurred expenses are, therefore, premised on

information that should appear in the .PST file that was housed on the Laptop.  While Lenovo has

not attempted to reconcile each event (due to a myriad of other concerns about the integrity of the

expense reports), it is readily apparent that many supposed client visits where Plaintiff seeks

reimbursement for meals and mileage do not exist.[8]  This suggests that Plaintiff destroyed those

entries by somehow altering the calendar on the .PST file before providing a copy of it to Lenovo.

## **ARGUMENT**

Individuals who reasonably anticipate that they will be involved in litigation have a duty

to preserve evidence for use by others who will also be involved in that litigation. *See Gordon v.*

---

[6] In fact, the only relevant email that Lenovo located does not approve purchase of the event tickets.  *See* Email from C. Rojas, dated Feb. 6, 2018, a true and correct copy of which is attached as Exhibit 15 to the Silveira Aff.

[7] Lenovo requested that Plaintiff produce – and Plaintiff agreed to produce – "[a]ll documents that evidence, reflect, or relate to [his] allegation that [he] 'incurred business expenses exceeding one hundred thousand dollars ($100,000),' . . . ." Plaintiff's Response to First Set of Requests for Production of Documents to Daniel McLaughlin, dated Nov. 23, 2021, at 4, a true and correct copy of which is attached as Exhibit 16 to the Silveira Aff.  Given that Plaintiff did not produce a separate "calendar" or "diary," Lenovo presumes Plaintiff intended to refer to the calendar housed in the .PST file on the Laptop.

[8] Focusing just on 2017 alone, this includes alleged travel on at least February 9, 17, 27, 28, April 10, 12, 14, 17, 24, May 18, 26, 31, June 2, 5, 9, 16, 30, July 7, 14, 25, August 15, 28, October 23, and November 9 that is not reflected in the calendar entries in the .PST file Plaintiff returned.

*Dreamworks Animation SKG, Inc.*, 935 F. Supp. 2d 306, 314 (D. Mass. 2013).  Spoliation is the "intentional, negligent, or malicious destruction of relevant evidence." *Townsend v. Am. Insulated Panel Co.*, 174 F.R.D. 1, 4 (D. Mass. 1997). Rule 37(e) of the Federal Rules of Civil Procedure permits the court to impose sanctions "[i]f electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery[.]"  *See Hefter Impact Techs., LLC v. Sport Maska, Inc.*, No. 15-13290-FDS, 2017 WL 3317413, at *6 (D. Mass. Aug. 3, 2017).

Sanctions are appropriate where the following three conditions are satisfied: (1) evidence of actual destruction of documents exists; (2) the party responsible for the documentary destruction must have been on notice of both the potential for litigation; and, (3) the party responsible for the documentary destruction must have been on notice of the potential relevance of the destroyed documents to any possible litigation.  *See Gomez v. Stop & Shop Supermarket Co.*, 670 F.3d 395, 399 (1st Cir. 2012); *Booker v. Massachusetts Dept. of Public Health*, 612 F.3d 34, 45-46 (1st Cir. 2010).  The moving party must also establish prejudice by the document destruction.  Fed. R. Civ. P. 37(e)(1).  Once a Court is satisfied that evidence was destroyed, and the moving party has been prejudiced as a result of that destruction, a range of sanctions is available including that the Court may "presume that the lost information was unfavorable to the party; instruct the jury that it may or must presume the information was unfavorable to the party; or dismiss the action or enter a default judgment."  Fed. R. Civ. P. 37(e)(2); *see also American Health Inc. v. Chevere*, 37 F. Supp. 3d 561, 565-66 (D.P.R. 2014);  *Hefter*, 2017 WL 3317413, at *6.

### A. Plaintiff Destroyed Relevant Evidence, Both When He Fully Anticipated Bringing His Claims and While the Litigation Has Been Pending.

Lenovo easily satisfies the first prong of the spoliation standard, where it is beyond dispute that the ESI contained on the Laptop that Plaintiff *admittedly* wiped – including any documents that were stored on the C:Drive, all metadata relating to *all* of the ESI previously on the Laptop, and emails and documents that should have been on the Laptop, but are not on either of the SD Cards provided by Plaintiff – is lost, and is not available in any other location accessible to Lenovo. *See Postle v. SilkRoad Tech., Inc.*, No. 18-cv-224-JL, 2019 WL 692944, at *3 (D.N.H. Feb. 19, 2019) (moving party must demonstrate that information was removed from the device, and does not exist anywhere else). StoneTurn's forensic analysis determined that the Laptop's hard drive had been wiped clean and/or removed entirely and replaced with a new hard drive, leaving no possibility for restoration.  Plaintiff originally testified that the SD cards he provided to Lenovo are a "complete backup" of the Laptop – but, as discussed, this is untrue.  Further, the existence of those SD cards does not save Plaintiff from spoliation sanctions.  *See, e.g.*, *In re Ezenia! Inc.*, 536 B.R. 485, 519 (Bankr. D.N.H. 2015) (spoliation sanctions warranted where employee admitted he deleted thousands of emails, even where backup existed).  Plaintiff (1) did not create a backup of documents or information stored on the Laptop's C:Drive before destroying it, and thus the C:Drive is permanently lost, (2) has repeatedly accessed his alleged "complete backup" of the Laptop's D:Drive and .PST files, including on the eve of filing and in connection with this litigation, making it impossible to tell whether what was ultimately produced to Lenovo as a "complete copy" is actually a complete copy of what existed at the time of Plaintiff's termination, and (3) destroyed relevant metadata from the "complete backup" before returning it to Lenovo, as evidenced by StoneTurn's analysis of the SD cards.

As to the second prong, Plaintiff cannot genuinely dispute that, the first time he wiped the Laptop and then when he accessed and/or altered the "complete backup" thereof, he was on notice of this litigation.  Plaintiff initially wiped the Laptop "shortly after [he] left Lenovo," *i.e.* within weeks – or even days – of bringing his claims, and thus at a time when he had presumably engaged counsel to represent him in this case who was obliged to inform him of his preservation obligations, over and above his obligations under the Agreement.  While he claims to have copied *some* of the Laptop's contents, it is beyond dispute that he did not preserve everything, but in fact wiped completely the C:Drive.  Further, with respect to copied files, it appears that he has accessed, and altered, such copies, despite his obligation to preserve all relevant evidence, and then wiped the Laptop again before finally returning it in June 2021.  Plaintiff's failure to take reasonable steps to preserve key evidence in the face of *his own* litigation could not be more clear. *See, e.g.*, *NuVasive, Inc. v. Day*, Nos. 19-10800-DJC, 19-10995-DJC, 2021 WL 9059745, at *7 (D. Mass. Aug. 23, 2021) (plaintiff represented by experienced attorney who was well-acquainted with preservation obligations failed to establish that he took reasonable steps to preserve ESI, warranting adverse inference sanctions under FRCP 37(e)); *Postle*, 2019 WL 692944, at *6-*7 (awarding sanctions under Rule 37(e) in the form of a "presum[ption] that the evidence deleted from the Dell laptop was unfavorable to [plaintiff]" where plaintiff failed to take reasonable steps to preserve evidence including, "as a bare minimum, that [plaintiff] leave the devices in the state in which they existed … without taking affirmative steps to alter that state.").

Finally, there can be no doubt as to the relevance of the information that Plaintiff spoliated. It is undisputed that information relevant to Plaintiff's claims were contained exclusively on the Laptop.  It is further undisputed that the Laptop itself, including the C:Drive which was completely wiped, and the SD card containing the "[in]complete backup" thereof, contained information

relevant to this litigation which is not available to Lenovo in any other form.  The relevance of this information cannot be disputed as Plaintiff himself purportedly used the "complete backup" to put together the reports of his allegedly incurred expenses, and to identify documents that he disclosed to Lenovo in connection with his Rule 16 Initial Disclosures in an attempt to support his claims. Indeed, he *continues* to maintain a copy of his .PST file (in direct violation of the Agreement), because he claims it is necessary "to litigate [his] claims."  Pl. Tr. at 125:13-14.[9]

### B.   Plaintiff's Conduct Has Prejudiced Lenovo.

To show prejudice resulting from spoliation, "a party must only 'come forward with plausible, concrete *suggestions* as to what [the destroyed] evidence *might have been*.'" *TLS Mgmt. & Mktg. Servs. LLC v. Rodriguez-Toledo*, No. 15-2121 (BJM), 2017 WL 1155743, at *1 (D.P.R. Mar. 27, 2017) (citations omitted) (emphasis in original); *NuVasive*, 2021 WL 9059745, at *5 (same).  Lenovo does not need to establish what specific documents were altered or destroyed, or how it would have used that information in the litigation.  *See, e.g.*, *TLS Mgmt. & Mktg. Servs. LLC*, 2017 WL 1155743, at *2 ("To show prejudice arising from the discarded laptop, TLS plausibly suggests that this device might have contained documents or information relevant to this action because [plaintiff] admitted that he used the laptop to access the Dropbox account where TLS kept confidential information.") (internal citations and quotations omitted); *see also Micron Tech., Inc. v. Rambus Inc.*, 645 F.3d 1311, 1328 (Fed. Cir. 2011); *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 960 (9th Cir. 2006) (district court's finding of prejudice not clearly erroneous

---

[9] Plaintiff likely will argue that all of his actions, including that he retains a copy of his .PST file, are "self-help discovery," citing *Verdrager v. Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, P.C.*, 474 Mass. 382, 410-12 (2016).  In *Verdrager*, the SJC found that an employee's theft of documents *may* constitute a protected activity under G.L. c. 151B.  The SJC was clear, however, that "the protections discussed here are limited, *applying as they do only to employees pursuing claims under G.L. c. 151B*."  *Id.* at 412 (emphasis added).  No court has ever found that an employee, like Plaintiff, may engage in "self-help" by destroying and otherwise refusing to return a former employer's confidential information while attempting to pursue a Wage Act or related common law claim.  He cannot.

"because any number of the 2,200 files could have been relevant to IDX's claims or defenses, although it is impossible to identify which files and how they might have been used.").

Again, Lenovo easily meets this standard.  As to the "DJM Q-4 2018 Correct ICS Calculation" – and likely other similar documents critical to Plaintiff's claims or Lenovo's defenses – Plaintiff indisputably (and despite his testimony to the contrary) altered it before producing it to Lenovo.  Similarly, as discussed, Lenovo would have expected to find in Plaintiff's .PST file copies of commission plans that were regularly shared over email with Account Executives like Plaintiff.  Those emails do not exist in the copy of the .PST file Plaintiff returned to Lenovo, thereby hampering Lenovo's ability to establish that Plaintiff received those plans.  Plaintiff further testified that he accessed the calendar on the .PST file to compile, post-termination, the expense reports that form the basis of his claim that Lenovo failed to reimburse him for business expenses, but the copy of the calendar housed in the .PST file he ultimately returned to Lenovo *does not reflect* those expenses, meaning – if we are to believe his testimony regarding how he compiled the reports post-termination - that he destroyed them.  Because Plaintiff did not provide Lenovo with the original Laptop containing documents contained in the C:Drive, his unaltered .PST files and corresponding metadata, and an unaltered version of the D:Drive, Lenovo has no access to highly relevant documents to aid its defense and has no means to dispute or verify the accuracy of Plaintiff's claims.

Had Plaintiff rightfully returned the Laptop, the Company would have been able to assess the validity of his claims by reviewing emails, calendar entries, and other documents and ESI housed on the Laptop, including the metadata associated with those documents.  For example, Lenovo could have reviewed the metadata associated with the "DJM Q-4 2018 Correct ICS Calculation" to determine whether, consistent with Plaintiff's testimony, it was created and

submitted timely under Lenovo's commission plan so as to have allowed Lenovo to address Plaintiff's concerns during the time period relevant to his claim to those commissions. It similarly could have compared his calendar with the expense reports to determine whether the expenses were, in fact, likely associated with legitimately incurred business travel. Because Plaintiff intentionally destroyed such data, however, Lenovo has been deprived of the ability to do so, and sanctions are appropriate.

Moreover, because Plaintiff acted in bad faith and with intent to deprive Lenovo of critical data, he shoulders a "heavy burden" to establish that his conduct has somehow not prejudiced Lenovo. *Micron Tech., Inc.*, 645 F.3d at 1328; *Anderson v. Cryovac, Inc.*, 862 F.2d 910, 925 (1st Cir. 1988) ("A party who is guilty of … intentionally shredding documents … should not easily be able to excuse the misconduct by claiming that the vanished documents were of minimal import."); *Coates v. Johnson & Johnson*, 756 F.2d 524, 551 (7th Cir. 1985) ("The prevailing rule is that bad faith destruction of a document relevant to proof of an issue at trial gives rise to a strong inference that production of the document would have been unfavorable to the party responsible for its destruction."). Plaintiff cannot meet this standard.

### C. The Court Should Presume that the ESI Was Unfavorable to Plaintiff, and Take Steps to Prevent Evidence and Testimony to the Contrary.

Because Plaintiff intentionally destroyed critical, relevant ESI on the eve of litigation – and again during the course of ongoing litigation – he has deprived Lenovo of any ability to assess or challenge the veracity of his factual assertions, as to both his allegedly unpaid commissions and his allegedly incurred (and unreimbursed) business expenses, and prevented Lenovo from gaining access to evidence critical to Lenovo's defenses to those claims. The Court should dismiss these claims, and the related common law claims, in their entirety. *See Keene v. Brigham and Women's Hosp., Inc.*, 439 Mass. 223, 245 (2003) (upholding default judgment where the trial court "found

that with everything before the court, the plaintiff was left without a remedy due to the negligent mishandling of the plaintiff's records by the defendant."); *see also TLS Mgmt. & Mktg Servs., LLC v. Mardis Fin. Servs., Inc.*, 2018 WL 3673090, at \*7 (S.D. Miss. Jan. 29, 2018) (default judgment is appropriate where, as here, "destruction of evidence was of the worst sort: intentional, thoroughgoing, and (unsuccessfully) concealed").

If the Court is not inclined to dismiss this case in its entirety despite the truly egregious and intentional nature of Plaintiff's conduct, at a minimum Lenovo requests that the Court enter an order precluding Plaintiff from (1) relying on any documents, emails, or calendar entries copied from the Laptop in attempting to prove his claims to unpaid commissions and business expenses, (2) relying on the expense reports he supposedly created in 2020 by referencing calendar entries that do not exist in the .PST file he returned to Lenovo in 2021, in support of his claim to unpaid expenses, and (3) claiming that he did not have knowledge of the terms of Lenovo's commission policies.  *See Perez v. Hyundai Motor Co.*, 440 F. Supp. 2d 57, 62 (D.P.R. 2006) ("Sanctions for spoilation range from dismissal of the action, exclusion of evidence or testimony or instructing the jury on a negative inference to spoilation whereby jury may infer that party that destroyed evidence did so out of realization that it was unfavorable.") (citation omitted).  Should this case proceed to trial, Lenovo further requests that the Court instruct the jury that it must presume that any information that may have been housed on the Laptop, but no longer exists, was unfavorable to him. *See NuVasive*, 2021 WL 9059745, at \*9 (magistrate recommends that the Court, "when ruling on what damages NuVasive is able to prove, presume that the lost evidence was unfavorable to defendants.").

Lenovo further requests that the Court award it the attorney's fees and costs it unnecessarily incurred in researching and trying to recreate Plaintiff's destruction of key evidence, up through

and including preparing and litigating the present motion. *NuVasive*, 2021 WL 9059745, at *9 (magistrate recommendation that NuVasive "be awarded the attorneys' fees and expenses it incurred in prosecuting its initial motions for sanctions and its renewed motions, including costs associated with NuVasive's attempts to recover the lost evidence."); *see also Postle*, 2019 WL 692944, at *1, *8 (awarding costs and fees incurred in prosecuting motion for sanctions, proportionate to degree of success).

## **<u>CONCLUSION</u>**

Wherefore, to remedy Plaintiff's nefarious conduct and ensure that Lenovo is not unfairly prejudiced, Lenovo respectfully requests that the Court dismiss Plaintiff's claims in their entirety. Alternatively, Lenovo requests that the Court enter an order precluding Plaintiff from (1) relying on any documents, emails, or calendar entries copied from the Laptop in attempting to prove his claims to unpaid commissions and business expenses, (2) relying on the expense reports he supposedly created in 2020 by referencing calendar entries that do not exist in the .PST file he returned to Lenovo in 2021, in support of his claim to unpaid expenses, and (3) claiming that he did not have knowledge of the terms of Lenovo's commission policies.  Lenovo further requests that the Court award it the attorney's fees and costs it unnecessarily accrued in researching and trying to recreate Plaintiff's destruction of key evidence, up through and including litigating the present motion, and grant such other and further relief as the Court deems just and proper.

DATED: October 6, 2022                    Respectfully submitted,


By: _____

     Kristin G. McGurn (BBO #559687)
     kmcgurn@seyfarth.com
     Alison H. Silveira (BBO #666814)
     asilveira@seyfarth.com
     SEYFARTH SHAW LLP
     Two Seaport Lane, Suite 1200
     Boston, MA  02210-2028
     Telephone:  (617) 946-4800
     Facsimile:   (617) 946-4801

     *Attorneys for Defendant Lenovo Global
     Technology (United States) Inc.*




## CERTIFICATE OF SERVICE

I, Alison H. Silveira, certify that on October 6, 2022, I caused a true and accurate copy of the foregoing document to be filed and uploaded to the CM/ECF system.


_____
Counsel for Defendant

21