UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | | |
|---|---|---|---|
| DANIEL MCLAUGHLIN, | ) | | |
| | ) | | |
| Plaintiff, | ) | | CIVIL ACTION |
| | ) | | NO. 20-11770-PBS |
| v. | ) | | |
| | ) | | |
| LENOVO GLOBAL TECHNOLOGY | ) | | |
| (UNITED STATES) INC., | ) | | |
| | ) | | |
| Defendant. | ) | | |

**MEMORANDUM OF DECISION AND ORDER**
**ON DEFENDANT'S MOTION FOR SPOLIATION SANCTIONS**

July 18, 2023

DEIN, U.S.M.J.

## I.        INTRODUCTION

The plaintiff, Daniel McLaughlin ("McLaughlin"), was employed as an account executive

by the defendant, Lenovo Global Technology (United States) Inc. ("Lenovo" or the "Company"),

from July 2016 until his employment was terminated on April 14, 2020.  After his termination,

in addition to claiming unpaid commissions, McLaughlin demanded reimbursement for unpaid

business expenses spanning several years in excess of $100,000.00.  His request for such

compensation allegedly was made for the first time after his termination and purportedly was

based on documentation maintained on his work computer (the "Laptop"), which had

remained in his possession after his termination in violation of his agreement with the

Company and Company policy.  The Laptop and its contents, which McLaughlin allegedly

downloaded onto two SD cards, were not produced to Lenovo until June 2, 2021.

During discovery Lenovo learned, and it is undisputed, that McLaughlin had wiped the Laptop clean and erased all information on the hard drive before returning it to Lenovo. McLaughlin contends that, nevertheless, he produced all materials from the Laptop to the Company on the two SD cards, and that the Company can otherwise reproduce the email communications and calendar from its own servers.  The Company denies that it has received all the information originally located on McLaughlin's Laptop, argues that it cannot verify many of McLaughlin's statements without the hard drive and alleges that some relevant documents may have been modified after McLaughlin's termination.  It also contends that archived files were to be kept on individual laptops, and that it cannot recreate all the correspondence.

This matter is before the Court on "Defendant's Motion for Spoliation Sanctions Against Plaintiff Daniel McLaughlin" (Docket No. 41) (the "Motion").  Therein, the Company is seeking the entry of judgment in its favor as a result of the "spoliation" of evidence.  In the alternative, Lenovo is seeking an order precluding McLaughlin from "(1) relying on any documents, emails, or calendar entries copied from the Laptop in attempting to prove his claims to unpaid commissions and business expenses, (2) relying on the expense reports he supposedly created in 2020 by referencing calendar entries that do not exist in the .PST [email and calendar] file he returned to Lenovo in 2021, in support of his claim to unpaid expenses, and (3) claiming that he did not have knowledge of the terms of Lenovo's commission policies."  (Motion at 2).[1]  Lenovo also requests that if the case goes to trial, the jury be given an adverse inference instruction. (Id.).  Finally, Lenovo is seeking an award of its attorney's fees and costs incurred "in

---

[1] McLaughlin has admitted that he has knowledge of the terms of Lenovo's commission policies so that is no longer an issue, and it will not be discussed further.  (See Pl. Opp. at 10).

researching and trying to recreate Plaintiff's destruction of key evidence, up through and including litigating the [Motion]." (Id.).

In this case, the record is clear that the plaintiff improperly wiped the Company's computer, and then provided constantly evolving explanations for his action – without ever persuasively explaining why he did not return the Company's computer with the information contained thereon as he was contractually required to do.  What is less clear is the scope of the harm his actions caused.  Lenovo has provided expert affidavits attesting to the fact that the Company was "unable to determine whether *any* of the documents on the SD Card[s] belatedly returned by Plaintiff were originally created on the Laptop, or instead were originally Lenovo documents that Plaintiff saved onto the Laptop." (Def. Supp. Br. at 6).  Similarly, Lenovo is missing information relating to when the documents were accessed, downloaded or modified. (Id.).  In contrast, McLaughlin argues, primarily through the affidavits of his counsel, that McLaughlin produced all the documents which had been on his Laptop, that Lenovo has all the metadata it needs to determine that the data had not been altered, and that any missing information is not material.

The parties have submitted extensive materials to the court, and the examination of the Laptop materials has continued throughout the briefing process.  It does appear that the Company has more information than it originally believed it had.  On the other hand, the record establishes that McLaughlin wiped the computer's hard drive without permission, provided disingenuous explanations for his actions to the Company, and made it impossible for the Company to determine whether there had been additional information on the Laptop before the contents were downloaded onto the SD cards.  The need for the Company to engage in

[3]

forensic examinations at all, and the resulting confusion, were all caused by McLaughlin's improper actions.

Therefore, after careful consideration of the extensive briefing and evidence presented to the Court,[2] and the oral arguments of counsel, the Motion is allowed in part and denied in part as detailed herein.  Specifically, to the extent that he is relying on calendar entries to support his requests for commissions and expenses, McLaughlin may rely only on the calendar entries on the Outlook calendar in Lenovo's system and cannot use the .PST calendar entries he allegedly downloaded onto an SD Card.  Additionally, McLaughlin shall reimburse the Company for the cost of its 3 forensic examinations of the Laptop as described herein.  Finally, if the case

---

[2]  The relevant pleadings and evidence are cited as follows: Complaint (Docket No. 9) ("Compl."); "Defendant's Memorandum in Support of its Motion for Spoliation Sanctions Against Plaintiff Daniel McLaughlin" (Docket No. 42) ("Def. Mem."); the Affidavit of defense counsel Alison H. Silveira (Docket No. 43) ("Silveira Aff.") and exhibits attached thereto ("Def. Ex. __"); "Plaintiff's Corrected Opposition to Defendant's Motion for Sanctions" (Docket No. 63) ("Pl. Opp."); the Affidavit of plaintiff's counsel Thomas Evans (Docket No. 64) ("Evans Aff.") and corrected exhibits attached thereto ("Pl. Ex. __"); the Affidavit of Daniel McLaughlin (Docket No. 60) ("McLaughlin Aff."); the Affidavit of Christopher Van, the President of Central Square Technologies, Inc. retained by the plaintiff (Docket No. 61) ("Van Aff."); the Second Affidavit of Attorney Thomas Evans (Docket No. 62) ("Evans Second Aff."); "Defendant's Reply in Support of its Motion for Spoliation Sanctions Against Plaintiff Daniel McLaughlin" (Docket No. 78) ("Def. Reply"); the Supplemental Affidavit of defense counsel Alison H. Silveira (Docket No. 78-1) ("Silveira Supp. Aff.") and exhibits attached thereto ("Def. Supp. Ex. __"); the Declaration of Daniel R. Fuller, Managing Director in the Forensic Technology practice at StoneTurn Group, LLP (Docket No. 78-5) retained by the defendant ("Fuller Decl."); the Declaration of Jason Ruger, Vice President and Chief Information Security Officer of Lenovo Global Technology (United States) Inc. (Docket No. 78-6) ("Ruger Decl."); "Plaintiff's Sur-Reply in Opposition to Defendant's Motion for Sanctions" (Docket No. 79) ("Pl. Sur-Reply"); the Supplemental Affidavit of Attorney Thomas Evans (Docket No. 80) ("Evans Supp. Aff.") and exhibits attached thereto ("Pl. Supp. Ex. __"); "Defendant's Supplemental Brief in Support of its Motion for Spoliation Sanctions Against Plaintiff Daniel McLaughlin" (Docket No. 83) ("Def. Supp. Br."); the Second Declaration of Daniel R. Fuller (Docket No. 83-1) ("Second Fuller Decl.") and exhibits attached thereto ("Fuller Ex. __"); "Plaintiff's Supplemental Brief in Opposition to Defendant's Motion for Sanctions" (Docket No. 84) ("Pl. Supp. Br."); the "January 13, 2023 Affidavit of Daniel J. McLaughlin" (Docket No. 85) ("McLaughlin 1/13/23 Aff."); the "January 13, 2023 Affidavit of Thomas Evans" (Docket No. 86) ("Evans 1/13/23 Aff.") and exhibit thereto ("Pl. 1/13/23 Ex."); "Plaintiff's Response to Defendant's Supplemental Brief (DKT. 83)" (Docket No. 90) ("Pl. Resp."); the "January 27, 2023 Affidavit of Thomas Evans" (Docket No. 91) ("Evans 1/27/23 Aff.") and exhibits thereto ("Pl. 1/27/23 Ex. __").

goes to trial, the jury shall be instructed that McLaughlin wiped the Laptop before it was returned to the Company, making it impossible for the Company to determine if there were additional materials on the Laptop which had not been downloaded onto the SD cards that McLaughlin provided, and that the jury may, but need not, infer that the contents of documents that were erased from the Laptop and not otherwise produced were unfavorable to McLaughlin.[3]

## II.    STATEMENT OF FACTS

Unless otherwise indicated, the following facts are not in dispute.

### The Laptop

McLaughlin was employed by Lenovo as an account executive from July 2016 until his employment was terminated on April 14, 2020.  (Compl. ¶ 3).  McLaughlin worked remotely and was given the Laptop by the Company.  (McLaughlin Aff. ¶ 1).  The Company configured the Laptop so that relevant files, including the calendar and emails, were maintained in a .PST file on the "C drive" of the Laptop.  (See Ruger Decl. ¶ 3; Def. Mem. at 6 (.PST file contains email and calendar files)).  According to McLaughlin, however,

> [w]hen I first received the Laptop I set the settings on it so that all of the documents or files I received or worked on, including all documents (pdfs and Word documents), all Excel spreadsheets, and all emails would be saved to the "D drive" of the Laptop.  I understand that setting a computer up that way is referred to as "partitioning" the computer or "partitioning" the hard drive.  That process also results in the computer's operating system (in this case Microsoft Windows),

---

[3] Within fourteen (14) days of the date of this Order Lenovo shall submit a verified motion attesting to the costs incurred in the 3 forensic examinations of the Laptop described herein.  If the Plaintiff has any objection to the costs submitted he may file a response within 7 days thereafter, and Lenovo may file a reply 7 days after that.  The court will issue an appropriate order based on the parties' written submissions unless otherwise ordered.  With respect to the jury instruction, the exact wording shall be left to the discretion of the trial judge.

being located on the "C drive" along with other third-party software such as Excel
and Word.  I left those settings in place the entire time I worked for Lenovo.

(McLaughlin Aff. ¶ 2).  Moreover, according to McLaughlin he used his Laptop for personal

matters as well as for work, "including logging into [his] personal web-based email account and

[his] personal web-based bank account."  (Id. ¶ 4).  It was McLaughlin's understanding that

logging into those accounts from the Laptop "resulted in cookies and other digital files that

contained information about [his] private usernames and passwords being saved to the 'C

drive' of the Laptop."  (Id.). [4]

On July 2, 2016, in connection with his employment, McLaughlin signed an Agreement

obligating him when he left the Company's employ to "return to Lenovo all property in [his]

possession related in any way to Lenovo's business and belonging to Lenovo . . . whether or not

containing Confidential information, including, without limitation, equipment . . . storage

media, . . . and any other documents or property of any kind and description."  (Def. Ex. 1 ¶ 1.1;

Def. Ex. 4).  It is undisputed that McLaughlin was obligated to return the Laptop and all his work

information contained therein to Lenovo when his employment ended.  Lenovo contends that

"the only location where an employee's complete .PST and/or user-archived email files are

housed is on the employee's local computer."  (Def. Ex. 2 at Int. Response No. 1).  Employees of

Lenovo were informed as early as 2016 that they needed to manually archive emails if their

mailbox was full, and were instructed to keep the .PST file free "from any alteration or deletion

because [the Company] cannot recover emails dated more than 3 months without [the

---

[4] Since McLaughlin never produced a copy of the C drive, his representations about the contents of that
drive have not been verified.

employee's] archived file." (Def. Supp. Ex. 2 at 3).[5] Nevertheless, McLaughlin contends that the Company should be able to recreate the emails and calendar entries that were on the Laptop from its own servers.

Lenovo terminated McLaughlin's employment on April 14, 2020. (Compl. ¶ 3). He submitted his reimbursement and commission requests to Lenovo dating back to 2017 on May 11, 2020, and they were rejected the same day as being untimely, since they were being submitted more than five days after they had been incurred. (Pl. Ex. 6). McLaughlin filed suit on June 11, 2020[6] claiming that Lenovo wrongfully failed to pay him for certain commissions and a bonus, and failed to reimburse him for certain business expenses in excess of $100,000.00. (See Compl. ¶ 14). At his deposition McLaughlin testified that email communications supporting his entitlement to claim expenses, as well as calendar entries which had backup for his expenses and mileage reports, were on the Laptop. (E.g., Def. Ex. 3 at 224, 246).

<u>McLaughlin's Production of the Contents of the Laptop</u>

On November 30, 2020, McLaughlin made his initial disclosures in this matter. (See Second Fuller Decl. at ¶ 3).[7] The initial disclosure included an email dated April 27, 2018 and a

---

[5] This communication was in the materials McLaughlin produced as having come from his Laptop. (See Def. Reply at 3 n.4). Nevertheless, McLaughlin has attested that he "was very surprised to learn recently that Lenovo claims that it does not back up its employees' computers or otherwise preserve such documents and digital files." (McLaughlin Aff. ¶ 10).

[6] McLaughlin filed suit in Middlesex Superior Court on June 11, 2020 and served Lenovo on September 8, 2020. (Docket No. 1 ¶¶ 1-2). Lenovo removed the case to this court on September 28, 2020 based on diversity jurisdiction. (Id. ¶ 5).

[7] After Plaintiff's counsel represented that the initial disclosures came from information on the SD cards that McLaughlin had produced to Lenovo on June 2, 2021, Lenovo authorized its expert to conduct a forensic examination to compare the initial disclosures with the SD cards. (Def. Supp. Br. at 2-3).

spreadsheet purporting to itemize McLaughlin's expenses.  (Evans 1/13/23 Aff. ¶¶ 5-6).  The

record is unclear whether there are multiple versions of this spreadsheet or if the spreadsheet

was modified in 2018 or thereafter.[8]

Lenovo demanded the return of the Laptop both before and after it learned of the

litigation.  (See Def. Mem. at 2-3; Def. Ex. 4).  Communications between counsel from

December 2020 through the return of the Laptop on June 2, 2021, led Lenovo to believe that

McLaughlin had not wiped or otherwise altered any of the material on the Laptop, and that the

only reason McLaughlin had not returned the Laptop was that he wanted to remove his

personal information from the device.  (Def. Mem. at 4-5; Def. Ex. 4 at 2-3 (summarizing

counsels' oral communications)).  Thus, at no time did McLaughlin's counsel inform Lenovo's

counsel that the hard drive of the Laptop had been wiped clean, despite having ample

opportunity to do so.  For example, on January 27, 2021, plaintiff's counsel disclosed for the

first time that the plaintiff had made "a back-up of data that was previously on his computer"

and offered to return the Laptop and the storage device with the back-up of data.  (Def. Ex. 5).

Notably, however, the email says nothing about the Laptop being wiped clean.  While plaintiff

points to this January 27, 2021 communication as proof that he was willing to return the

---

Lenovo's expert opined that 19 emails and 18 other documents produced in the initial disclosures were
not on the SD cards.  (See Second Fuller Decl.  ¶¶ 5, 7).  McLaughlin has submitted persuasive evidence
that all the emails and most of the documents had, in fact, been produced on the SD cards, and that the
other documents included in the initial disclosures did not come from the Laptop.  (See Evans 1/27/23
Aff. ¶¶ 7, 12-14).  If Lenovo discovers facts to the contrary during discovery, it may raise the issue before
trial again.

[8] The parties spend a great deal of time arguing whether there are multiple spreadsheets and whether
the spreadsheet was altered after 2018.  (See Pl. Sur-Reply at 2-4).  The deposition testimony on this
point is unclear.  While Lenovo could not originally locate the April 27, 2018 email on its servers, it now
appears that it has done so.  (Def. Supp. Br. at 3 n.3).  The determination as to if and when the
spreadsheet was altered is best left to the jury, if Lenovo still believes that there is an issue.

Laptop, (see Evans 1/13/23 Aff. ¶ 4), in subsequent communications plaintiff's counsel reiterated that his client wanted to remove "personal" information and documents before he returned the Laptop and storage device, thereby dispelling any notion that he was prepared to immediately return the Laptop.  (See Def. Ex. 4 at 2 (discussing February 10, 2021 communication)).[9]

Lenovo's counsel had informed plaintiff's counsel that Lenovo did not consent to the removal of any information from its computer, and upon learning that McLaughlin had made a back-up of the information on the Laptop, sought confirmation that the backup was the "only copy that [Plaintiff] has of any Lenovo documents or other information[.]"  (Def. Ex. 6; Def. Ex. 4 at 2).  No response to this inquiry was forthcoming.  (Id.).  On March 4, 2021, Lenovo's counsel proposed that McLaughlin either return the Laptop and storage device with no documents removed, or engage a third party vendor to create a file list from which McLaughlin could identify what he wanted removed from the Laptop and/or hard drive.  (Def. Ex. 7).  There was no response to either this email or follow-up communications sent on March 16 and 24, 2021.  (See Def. Ex. 4 at 2).  At no time was Lenovo informed that the Laptop had been wiped clean.

After an unsuccessful mediation in May 2021, McLaughlin finally returned the Laptop on June 2, 2021, along with an SD card which he testified was a "complete backup of everything that was on the machine[.]"  (Def. Ex. 3 at 283-84).  Lenovo retained the services of StoneTurn Group, LLP ("StoneTurn") to conduct a forensic examination of the Laptop.  (Fuller Decl. ¶¶ 1-2).  According to StoneTurn the forensic examination revealed that the hard drive had either

---

[9] Citations to page numbers in the parties' briefs refer to the parties' page numbering rather than the court's CM/ECF numbers.

been wiped or was brand new, as it was empty and contained no data.  (Id. ¶ 3).  StoneTurn also conducted a forensic examination of the SD Card that McLaughlin had produced.  (Id. ¶ 4).  According to StoneTurn, it appeared that everything had been downloaded to the SD Card on June 2, 2021.  (Id.).  It is undisputed that there was no .PST file on the SD Card.  (Id.).

After notifying McLaughlin's counsel of the omission of the .PST file, on September 27, 2021, McLaughlin produced a second SD Card containing a backup of the missing .PST file which contained McLaughlin's calendar.  (See Def. Mem. at 6).  There is no explanation in the record as to why this was not included on the original SD Card.  StoneTurn conducted a forensic examination of the second SD Card.  (Fuller Decl. ¶ 5).  StoneTurn compared the calendar entries on this second SD Card with McLaughlin's Outlook calendar that Lenovo was able to recover from its servers.  (Id. ¶ 6).  According to StoneTurn, the two were not identical.  (Id.).  McLaughlin disputes this and his counsel asserts that based on his own review he "has not been able to identify any calendar item on either calendar that does not correspond to the same calendar item on the same day at the same time on the other calendar."  (Pl. Sur-Reply at 4).  McLaughlin admits that all calendar entries should be on the Outlook calendar that Lenovo itself was able to recover.  (Pl. Resp. at 8).

<u>What Was Downloaded And When</u>

The issues before this court raise substantial questions as to what McLaughlin downloaded from the Laptop before he wiped it clean, and when he did so.  The "when" is important because McLaughlin contends that he had no reason to believe that he would need the information for litigation at the time he wiped the computer, and, therefore, he cannot be liable for spoliation.  The "what" is important because, according to McLaughlin, the Company

has copies of everything that was on the Laptop, as a result of which, there was no prejudice to Lenovo.  As detailed below, McLaughlin's arguments are not persuasive.

<u>The When</u>

According to McLaughlin, he did not know that he would be in a dispute with Lenovo until May 11, 2020, when his request for reimbursement was denied.  He further contends that he wiped the Laptop clean before then, *i.e.*, shortly after his employment was terminated on April 14, 2020.  For the reasons detailed below, this court finds that the only credible evidence is that McLaughlin knew that he was likely to be in a dispute with Lenovo at the time he wiped the Laptop, and that his argument to the contrary is not supported by the facts.

As an initial matter, McLaughlin should have known that he would be engaged in a dispute about his entitlement to substantial reimbursements from the moment his employment with Lenovo was terminated, at a minimum.  Company policy called for reimbursements to be requested within 5 days of the expense being incurred, and McLaughlin was seeking payments going back 3 years.  Thus, the argument that he first became aware of the possibility of litigation with Lenovo on May 11, 2020 is not persuasive.

Moreover, the record does not support McLaughlin's explanation for when he wiped the Laptop clean.  According to McLaughlin, "shortly after" his employment was terminated he "noticed that the operating system on the Laptop – Windows 10 – was not operating because Lenovo's license for it had expired."  (McLaughlin Aff. ¶ 7).  (<u>See</u> <u>also</u> Pl. Opp. at 3 ("Within a few days or weeks of being terminated by Lenovo, Mr. McLaughlin noticed that the operating system (Windows 10) on the Laptop was no longer working because Lenovo's license for its use had expired (presumably because of Mr. McLaughlin's termination).")).  As a result, and before

replacing the operating system, he "made a complete copy of the contents of the Laptop's 'D drive' by copying them onto an SD storage card[,]" thereby preserving "all of the documents, spreadsheets, emails and email attachments that had been on the Laptop" at the time of his termination on April 14, 2020. (McLaughlin Aff. ¶ 7). He then allegedly replaced "Windows 10 and some other third-party software – including Word and Excel on the Laptop" and "continued to use the Laptop for various personal tasks." (Id. ¶ 8). By linking the date he wiped the Laptop to "shortly after" his employment was terminated and Windows 10 allegedly stopped working, McLaughlin is attempting to convince the court that the destruction took place before he knew Lenovo would not pay his claimed commissions and expenses. (See Pl. Sur-Reply at 6 ("McLaughlin agrees that, as Lenovo alleges, shortly after Lenovo terminated him, he replaced the operating system on the Laptop and he wiped the hard drive of the Laptop."); Pl. Opp. at 14-15). His explanation, however, is not convincing.

Lenovo has submitted the declaration of its Chief Information Security Officer. He attested that the Windows operating system license from Microsoft was tied to the machine, and did not end when McLaughlin's employment ended. (Ruger Decl. ¶ 4). In fact, according to Lenovo, it has never had the ability to remotely remove an individual laptop computer from its Windows 10 operating system license. (Id.). McLaughlin has submitted nothing to refute this testimony. Thus, the only persuasive evidence before the court is that the computer was wiped on June 2, 2021, the date the information was loaded onto the SD cards which were produced to Lenovo – a date more than a year after Lenovo informed McLaughlin that he was not entitled to the compensation he was seeking. If there was an earlier download, it has not been provided to Lenovo or the court.

Moreover, even assuming, arguendo, that Windows 10 had stopped functioning, it still does not explain the need to wipe the hard drive clean.  The Laptop, and its contents, belonged to Lenovo.  McLaughlin could have eliminated only his personal information, leaving the rest of the information intact (see Def. Ex. 7, email of 3/4/21 proposing third party review of the Laptop so that McLaughlin could identify information he wanted deleted).  Even more fundamentally, there was no reason for McLaughlin to continue to use the Laptop at all, especially since he had other laptops he could use.  (See Def. Reply at 2 n.3).  He could have put the Laptop aside until all of his issues with the Company were resolved.  The belated excuse that the Laptop had to be wiped clean because Windows 10 stopped working is simply not supported by the record.

The lengths to which McLaughlin has gone to obfuscate the record is exemplified by his response to Requests for Admissions ("RFA") filed on November 2, 2021.  McLaughlin was asked to admit:

> [P]rior to returning your Lenovo-issued laptop computer to Lenovo, you erased all data thereon.

(Def. Ex. 10 at Response No. 4).  Despite his present admission that "he wiped the hard drive of the Laptop", (Pl. Sur-Reply at 6), McLaughlin responded as follows:

> McLaughlin admits that he removed his personal data from the laptop.  Otherwise denied.

(Def. Ex. 10 at Response No. 4).  McLaughlin attempts to justify this Response, and blame Lenovo for attempting to recreate an "unfair inference," by arguing that at the time of the RFA, Lenovo "already *knew* that rather than erasing the data on the Laptop, Mr. McLaughlin had **copied** all of the data and provided it to Lenovo's counsel on an SD card which, according to

Lenovo, contained 6,554 documents." (Pl. Opp. at 4-5 (emphasis in the original)). Of course, this argument fails to explain why he could not have truthfully answered the RFA by admitting that he had "erased all data" on the Laptop and then explaining what he allegedly copied. He not only "removed" his personal data, but "removed" Lenovo's data as well, a fact which he fails to mention. In this court's view, the response to the RFA does not accurately reflect McLaughlin's actions.

In sum, this court finds that Lenovo has met its burden of establishing that at the time McLaughlin wiped the Laptop clean, he knew he was either in, or likely to be in, a dispute with the Company.

<u>The What</u>

Continued forensic analyses and explanations have established that Lenovo has more information than it originally believed it had when it first filed the Motion. Nevertheless, Lenovo has met its burden of proving that it has been harmed by McLaughlin's actions.

With respect to the "what" was downloaded onto the two SD cards, there now appears to be agreement[10] that the "internal" metadata disclosing (1) when a document was first created; (2) when the content was last modified; (3) the author; (4) who last made the edits; and (5) when it was last printed has been provided. On the other hand, the record establishes that the "external" metadata disclosing the "create date" and "last accessed" information has been lost. (Def. Supp. Br. at 5-6). The loss of external metadata prevents the Company from

---

[10] It appears that the Company originally believed that it did not have all of the internal metadata. (<u>See</u> Def. Mem. at 14; Def. Supp. Br. at 5-6 (explaining confusion)).

determining when a file was originally created on a source device and when the file was last accessed prior to copying.  (Second Fuller Decl. ¶ 11).

According to McLaughlin's own expert, one cannot determine if any metadata was "lost" when McLaughlin copied the D drive to an SD card, since "one would need to know what metadata was associated with those documents when they resided on the Laptop's 'D drive'" – information which was not available since the computer had been wiped clean.  (Van Aff. ¶ 12). He also opined that no one can rely on the "last written" information to determine when a document had been modified since "[m]any actions, other than substantive modifications, can cause files to reflect a new 'last written' or 'last modified' date."  (Id. ¶ 13).  Thus, it is clear that wiping the Laptop had some impact on Lenovo's ability to interpret the data on the SD cards, but the relevance of any such missing information remains unclear.

Fundamentally, because McLaughlin wiped the Laptop, Lenovo cannot determine what, if anything, was on the Laptop before the erasure, *i.e.,* whether there were materials deleted before the download.  McLaughlin has not provided proof of any download prior to June 2, 2021, and has not provided copies of anything residing on the C drive.  According to the Company, the C drive should have contained emails and the calendar.  When McLaughlin produced a purported copy of the D drive, it did not contain the calendar, leaving open the question whether it was on the C or D drive.  Thus, this court concludes that Lenovo has

established that there may have been materials destroyed by wiping the Laptop clean.

Additional facts will be provided below as appropriate.

### III.   ANALYSIS

#### A.   Standard of Review

As the court explained in Gordon v. DreamWorks Animation SKG, Inc., 935 F. Supp. 2d

306 (D. Mass. 2013):

> [S]poliation is the "intentional, negligent, or malicious destruction of relevant
> evidence." Townsend v. Am. Insulated Panel Co., Inc., 174 F.R.D. 1, 4 (D. Mass. 1997).
> The court must first determine whether an act of destruction occurred.  This requires
> finding four elements: 1) an act of destruction; 2) discoverability of the evidence; 3)
> intent to destroy the evidence; and 4) occurrence of the act after commencement of
> litigation or, if before, at a time when the party was on notice that the evidence might
> be relevant to potential litigation.  McGuire v. Acufex Microsurgical, Inc., 175 F.R.D.
> 149, 154 (D. Mass. 1997); Citizens for Consume v. Abbott Labs., Civil Action No. 01-
> 12257-PBS, 2007 WL 7293758, at *5 (D. Mass. Mar. 26, 2007).  The court must also
> consider prejudice to the moving party, although the prejudice inquiry tends to
> overlap with the determination of the appropriate sanction.  McGuire, 175 F.R.D. at
> 154; see Citizens for Consume, 2007 WL 7293758, at *5.

Gordon, 935 F. Supp. 2d at 313.  Thus, "[b]efore an inference of spoliation may be drawn, its

proponent must show at a bare minimum that the opposing party had notice of a potential

claim and of the relevance to that claim of the destroyed evidence" and "the party urging that

spoliation has occurred must show that there is evidence that has been spoiled (i.e., destroyed

or not preserved)."  Gomez v. Stop & Shop Supermarket Co., 670 F.3d 395, 399 (1st Cir. 2012)

(citations omitted).

Fed. R. Civ. P. 37(e), as amended in 2015, provides for sanctions "[i]f electronically

stored information [ESI] that should have been preserved in the anticipation or conduct of

litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be

[16]

restored or replaced through additional discovery[.]"[11]  If prejudice results due to the failure to preserve the ESI, the court "may order measures no greater than necessary to cure the prejudice[.]"  Fed. R. Civ. P. 37(e)(1).  Alternatively, if the court finds "that the party acted with the intent to deprive another party of the information's use in the litigation" the court may "presume that the lost information was unfavorable to the party" and so instruct the jury, or "dismiss the action or enter a default judgment" even in the absence of any prejudice.  Fed. R. Civ. P. 37(e)(2).  As detailed herein, McLaughlin is liable for spoliation, and sanctions are warranted.

### B.   The Plaintiff is Liable for Destruction of Relevant Evidence

McLaughlin argues strenuously that since he produced the two SD cards, he cannot be liable for spoliation since nothing was destroyed.  This court disagrees.  Levono has established that ESI was lost due to McLaughlin's actions, and that it cannot be restored or replaced through further discovery.

The record is clear that an "act of destruction" occurred in this case.  Gordon, 935 F. Supp. 2d at 313.  McLaughlin produced a Laptop with the hard drive wiped clean.  He never produced any version of the C drive, which may, or may not have contained relevant

---

[11] It is not clear that Rule 37(e) should be applied in the instant case. As stated in the Advisory Notes, "[t]he rule applies only if the information was lost because the party failed to take reasonable steps to preserve the information" and the amendment was deemed necessary because "[d]ue to the ever-increasing volume of electronically stored information and the multitude of devices that generate such information, perfection in preserving all relevant electronically stored information is often impossible." Advisory Notes to 2015 Amendment.  Thus, the Rule purports to balance the competing factors that come into play when dealing with the large volume of ESI commonly found in present-day litigation. Those factors are not at issue here, where the facts establish a deliberate decision to wipe the hard drive clean.  However, courts have applied the provisions of Rule 37(e) to situations where a party has intentionally wiped a computer clean.  See, e.g., Postle v. SilkRoad Tech., Inc., Civil No. 18-cv-224-JL, 2019 WL 692944, at *1 (D.N.H. Feb. 19, 2019).  The parties have assumed that Rule 37(e) applies as well, so the court will apply it in the instant case.

information: according to the Company, emails and McLaughlin's calendar should have been stored on the C drive.  To the extent that the D drive was produced on SD cards, it is undisputed that the external metadata had been lost.  While McLaughlin contends that he "produced" all the material that was on the D drive, that cannot be verified absent the original hard drive. Lenovo has established that there were emails and potentially other documents that were archived only on an employee's laptop, and not the Company's servers, so they cannot be reconstructed if they were not downloaded.  Thus, Lenovo has met its burden of proving that an act of destruction occurred.

Similarly, the fact that the materials that were destroyed were discoverable in the instant case does not require substantial discussion.  McLaughlin intends to support his claims with email communications and his calendar.  These were originally configured on the C drive by Lenovo, and purportedly moved to the D drive by McLaughlin.  McLaughlin contends that his initial disclosure of relevant information came from documents that were originally stored on the Laptop.  There is no question that the material at issue was discoverable.

McLaughlin argues that he never intended to destroy any evidence and thus cannot be liable for spoliation.  This argument is not persuasive.  As an initial matter, it is well established that a party may be liable for spoliation even if the destruction of the evidence was due to negligence.  See Trull v. Volkswagen of Am., Inc., 187 F.3d 88, 95 (1st Cir. 1999); Am. Health Inc. v. Chevere, 37 F. Supp. 3d 561, 566 (D.P.R. 2014).[12]  The need to establish that "the party that lost the information acted with the intent to deprive another party of the information's use in the litigation" is only relevant to the issue of heightened sanctions under Rule 37(e)(2).

---

[12] Similarly, Fed. R. Civ. P. 37(e) is not limited by its terms to the intentional destruction of evidence.

NuVasive, Inc. v. Day, Civil Action No. 19-10800-DJC, 2021 WL 9059745, at *8 (D. Mass. Aug. 23, 2021) quoting Fed. R. Civ. P. 37(e), 2015 Notes of Advisory Committee.  Moreover, despite his protestations to the contrary, the record compels the conclusion that McLaughlin acted with the intent to deprive Lenovo of the Laptop which belonged to Lenovo, and to deprive Lenovo of the original hard drive of its own computer.  There is no question that McLaughlin's action in wiping the Laptop clean was an intentional act.  Even McLaughlin's own expert has attested that wiping the hard drive clean eliminated some metadata – the extent of which could no longer be verified without the hard drive.  Thus, Lenovo has established that McLaughlin acted with actionable intent to destroy the evidence on the hard drive.

Lenovo also has established that McLaughlin acted with the intent to deprive Lenovo of the information, thereby qualifying for heightened sanctions under Rule 37(e)(2).  There is no question that McLaughlin intentionally destroyed the content of the hard drive of the Laptop, with full knowledge that the Laptop and the content thereon belonged to Lenovo.  He was advised immediately upon the termination of his employment to return the Laptop – instead he wiped it clean.  Any argument that McLaughlin somehow had to do something with the Laptop because the Window license expired is defeated by the fact that the license did not expire.  It is also not a logical argument -- there was no reason for McLaughlin to have continued using this computer at all, since he had others and the Laptop belonged to Lenovo.

In the course of this litigation, McLaughlin has refused to produce the C drive, and has refused to provide any version of the information allegedly on the D drive prior to the download of June 2, 2021.  Despite McLaughlin's representation that the initial SD card he produced contained the entire D drive, it did not contain the .PST file.  Lenovo has more than

met its burden of proving that McLaughlin intended to prevent Lenovo from using the Laptop in this litigation by wiping the hard drive clean. See TLS Mgmt. & Mktg. Servs. LLC v. Rodriguez-Toledo, Civil No. 15-2121 (BJM), 2017 WL 1155743, at *2 (D.P.R. Mar. 27, 2017) ("Because Rodriguez completely deleted the information on the external hard drive – which may or may not have been coextensive with the information transferred onto the USB flash drive provided to Rodriguez's attorney – I further find that Rodriguez acted with the intent to deprive TLS from using ESI in litigation"). See also NuVasive, 2021 WL 9059745, at *8 (since "[i]ntent rarely is proved by direct evidence," court has "substantial leeway" in determining intent and may consider various factors) (and cases cited).

Finally, the record amply supports the conclusion that McLaughlin acted at a time when he knew or should have known that he was likely to be in litigation with Lenovo.  "The duty to preserve material evidence arises not only during litigation but also extends to that period before the litigation when a party reasonably should know that the evidence may be relevant to anticipated litigation." Perez-Velasco v. Suzuki Motor Co., Ltd., 266 F. Supp. 2d 266, 268 (D.P.R. 2003) (quoting Silvestri v. Gen. Motors Corp., 271 F.3d 583, 591 (4th Cir. 2001) (citation omitted)).  As described more fully above, given the untimeliness of McLaughlin's request for substantial compensation, he should have known immediately upon the termination of his employment at the latest that he was likely to be involved in litigation with Lenovo.  Moreover, there is no evidence to support McLaughlin's contention that the Laptop was wiped clean before he commenced litigation, just one month after his employment ended.  Despite numerous communications with Lenovo's counsel, McLaughlin's attorney did not mention that any data had been downloaded until January 27, 2021, and even then he did not say that the

Laptop had been wiped clean.  The only download McLaughlin has produced was dated substantially after litigation had started.  McLaughlin's attempt to link his "need" to download the contents of the Laptop with the termination of his employment, when the Windows license purportedly expired, is not supported by the record.  For all these reasons, without limitation, the destruction of evidence took place at a time litigation was likely, if it had not already begun. Lenovo has established that McLaughlin is liable for spoliation.

      **C.  <u>Appropriate Sanctions</u>**

"Courts have inherent power to impose sanctions on parties that have spoliated evidence."  <u>Hefter Impact Techs., LLC v. Sport Maska, Inc.</u>, Civil Action No. 15-13290-FDS, 2017 WL 3317413, at *8 (D. Mass. Aug. 3, 2017) (additional citations omitted).  "The potential sanctions include 'dismissal of the case, the exclusion of evidence, or a jury instruction on the 'spoliation inference.''"  <u>Townsend</u>, 174 F.R.D. at 4 (quoting <u>Vazquez-Corales v. Sea-Land Serv., Inc.</u>, 172 F.R.D. 10, 13 (D.P.R. 1997) (additional citations omitted)).  <u>See</u> <u>also</u> Fed. R. Civ. P. 37(e). "When considering the severity of the sanction warranted in the facts and circumstances of a particular case, courts have weighed the following, or similar, factors"

> (1) whether the defendant was prejudiced as a result of the destruction of the evidence; (2) whether the prejudice can be cured; (3) the practical importance of the evidence; (4) whether the plaintiff was [acting] in good faith or bad faith; and (5) the potential for abuse if the evidence is not excluded.

<u>Townsend</u>, 174 F.R.D. at 4 (quoting <u>Mayes v. Black & Decker (U.S.), Inc.</u>, 931 F. Supp. 80, 83 (D.N.H. 1996) (additional citations omitted)).

In the instant case, Lenovo has met its burden of proving that it was prejudiced by McLaughlin's actions.  "The content of lost evidence can never be proven to a certainty" and, "[t]ypically, only the spoliator knows how much prejudice has been caused by the destruction."

[21]

NuVasive, 2021 WL 9059745, at *8 (citation omitted). Here, Lenovo has established that it lost the contents of the C drive and the external metadata of the documents on the D drive, at a minimum.  There does not appear to be any way to establish if items were removed from the D drive before the contents were loaded onto the SD cards.  Lenovo has established that there may have been archived emails and other documents located on the Laptop which were not stored on its own servers.  Lenovo's expert has identified calendar entries and other materials which he believes are not identical to the materials on the SD cards which McLaughlin belatedly produced, although it is not clear whether this analysis will survive further scrutiny. McLaughlin's expert has confirmed that eliminating Lenovo's ability to compare materials produced with the hard drive prevents Lenovo from confirming the accuracy of some of McLaughlin's representations.  Where, as here, McLaughlin acted deliberately, in violation of his contractual obligations, and in defiance of Lenovo's legitimate demands for the return of its materials, he "bears the 'heavy burden' to show a lack of prejudice to the opposing party" because a party who is guilty of the intentional destruction of evidence "should not easily be able to excuse the misconduct by claiming that the vanished documents were of minimal import."  TLS Mgmt., 2017 WL 1155743, at *2 (quoting Micron Tech., Inc. v. Rambus Inc., 645 F.3d 1311, 1328 (Fed. Cir. 2011) (internal punctuation and additional quotations omitted)). Accord Anderson v. Cryovac, Inc., 862 F.2d 910, 925 (1st Cir. 1988), aff'd 900 F.2d 388 (1st Cir. 1990).  McLaughlin has not met this heavy burden.  Lenovo, on the other hand, has met its burden of coming forward "with plausible, concrete suggestions as to what the destroyed evidence might have been[,]" including the C drive and the external metadata for documents

on the D drive, at a minimum.  <u>NuVasive</u>, 2021 WL 9059745, at *5 (punctuation and citations

omitted).  That is sufficient to warrant sanctions.

Lenovo argues strenuously for the sanction of dismissal of this action.  While the

question is a close one given McLaughlin's intentional acts and disingenuous explanations, this

court finds that this "harsh sanction" is not appropriate here.  <u>Micron Tech.</u>, 645 F.3d at 1328-

29.  As the <u>Micron</u> court explained:

> the presence of bad faith and prejudice, without more, do not justify the imposition
> of dispositive sanctions.  In gauging the propriety of the sanction, the district court
> must take into account "(1) the *degree* of fault of the party who altered or
> destroyed the evidence; (2) the *degree* of prejudice suffered by the opposing party;
> and (3) *whether there is a lesser sanction* that will avoid substantial unfairness to
> the opposing party and, where the offending party is seriously at fault, will serve to
> deter such conduct by others in the future."

<u>Id.</u> at 1329 (quoting <u>Schmid v. Milwaukee Elec. Tool Corp.</u>, 13 F.3d 76, 79 (3rd Cir. 1994)).  In the

instant case, in the absence of evidence that Lenovo will not be able to recover substantially all,

if not all, of the deleted materials from its own servers or the SD cards, dismissal is too harsh a

punishment.

This court does find it appropriate to limit McLaughlin's use of any calendar entries to

support his claims to those entries on the calendar on Lenovo's server.  Lenovo's expert has

opined that the entries on the Company's server and those on the SD card McLaughlin

produced are not identical.  While McLaughlin disputes this conclusion, he does agree that

Lenovo's calendar should contain all of his entries.  Since McLaughlin created the confusion by

wiping the Laptop clean, and only producing the calendar on an SD card well after litigation had

commenced, it is appropriate to limit his use of calendar entries to those that can be found on

Lenovo's server.  Moreover, such a limitation would "restore the prejudiced party to the same

[23]

position [it] would have been in absent the wrongful destruction of evidence by the opposing party."  Yu Chen v. LW Rest., Inc., No. 10 CV 200 (ARR), 2011 WL 3420433, at *19 (E.D.N.Y. Aug. 3, 2011) (internal punctuation, quotation and citation omitted).

At this juncture, the court will not similarly limit McLaughlin's use of emails to those found on Lenovo's servers.  As Lenovo has attested, there are communications which would have been archived exclusively on the Laptop, and would not be found on Lenovo's servers.  As detailed above, Lenovo has not met its burden of proving that McLaughlin fabricated documents in connection with his production.  If Lenovo wants to challenge the authenticity of any specific documents at trial, it will be free to do so.  See, e.g., notes 7 & 8, supra.  To the extent that there are documents which no longer exist, the harm to Lenovo will be mitigated by the adverse jury instruction described below.

This court further orders McLaughlin to pay for the three forensic examinations by StoneTurn as detailed herein.  See TLS Mgmt., 2017 WL 1155743, at *3 (defendants ordered to pay for a forensic examination of their computer since ESI was willfully discarded or deleted from the computer).  If McLaughlin had returned the Laptop as contractually required, or even had stopped using it and put it in a neutral place while sorting out how to remove his personal information, there would have been no need for Lenovo to have the forensic examinations.  McLaughlin's actions seriously complicated discovery in this case unnecessarily and led to the motion for sanctions and extensive briefing.  Under such circumstances, monetary sanctions are appropriate.  See In re Ezenia! Inc., 536 B.R. 485, 525 (D.N.H. 2015) (monetary sanctions are appropriate where party's actions in destroying emails led to motion for sanctions and employment of a forensic expert); Hefter Impact Tech., 2017 WL 3317413, at * 9 (defendant

ordered to pay reasonable attorneys' fees and costs incurred by plaintiff in bringing motion for sanctions where defendant's "somewhat lackadaisical approach to document production, and its aggressive document destruction policies has created substantial issues in this case.").

However, this court declines to order McLaughlin to pay all or part of Lenovo's attorneys fees in connection with the Motion for sanctions. The record establishes that Lenovo, itself, complicated this matter. Lenovo incorrectly asserted that all metadata had been destroyed, and that an important email had not been produced. These assertions led to substantial briefing and analysis. It is appropriate, therefore, for both sides to bear their own attorneys' fees.

Finally, this court concludes that the jury should be instructed that McLaughlin wiped the Laptop clean before returning it to Lenovo, as a result of which Lenovo cannot determine if there were additional materials on the computer which McLaughlin had not downloaded. The jury shall also be instructed that it may, but need not, presume that the deleted information was unfavorable to McLaughlin. Fed. R. Civ. P. 37(e)(2). See also Booker v. Mass. Dep't of Pub. Health, 612 F.3d 34, 45 (1st Cir. 2010) ("Where a proper evidentiary foundation has been laid, 'a trier of fact may (but need not) infer from a party's obliteration of a document relevant to a litigated issue that the contents of the document were unfavorable to that party.'") (quoting Testa v. Wal-Mart Stores, Inc., 144 F.3d 173, 177 (1st Cir. 1998)). McLaughlin's actions alone have made it impossible for Lenovo to establish with any certainty what information has been deleted from the Laptop. McLaughlin's destruction of the hard drive was in clear violation of his contractual obligations and Company policy. An adverse jury instruction is warranted.

IV.     **CONCLUSION**

For the reasons detailed herein "Defendant's Motion for Spoliation Sanctions Against Plaintiff Daniel McLaughlin" (Docket No. 41) is allowed in part and denied in part. Specifically, to the extent that he is relying on calendar entries to support his requests for commissions and expenses, McLaughlin shall be limited to supporting his claims to the calendar entries on the Outlook calendar in Lenovo's system, and cannot use the .PST calendar entries he allegedly downloaded onto an SD Card.  Additionally, McLaughlin shall reimburse the Company for the cost of its 3 forensic examinations of the Laptop as described herein.  Finally, if the case goes to trial, the jury shall be instructed that McLaughlin wiped the Laptop before it was returned to the Company, making it impossible for the Company to determine if there was additional materials on the Laptop which had not been downloaded onto the SD cards that McLaughlin eventually provided, and that the jury may, but need not, presume that the deleted information was unfavorable to McLaughlin.  Fed. R. Civ. P. 37(e)(2).  The procedure for seeking the compensation authorized herein is detailed in note 3, supra.

                                        / s / Judith Gail Dein
                                        Judith Gail Dein
                                        United States Magistrate Judge

[26]